# UNITED STATES NAVY-MARINE CORPS
# COURT OF CRIMINAL APPEALS
# WASHINGTON, D.C.

**Before**
**J.R. MCFARLANE, M.C. HOLIFIELD, K.J. BRUBAKER**
Appellate Military Judges

**UNITED STATES OF AMERICA**

v.

**JIM D. VILLANUEVA**
**SHIP'S SERVICEMAN SECOND CLASS (E-5), U.S. NAVY**

**NMCCA 201400212**
**GENERAL COURT-MARTIAL**

**Sentence Adjudged:** 14 February 2014.
**Military Judge:** CAPT B.L. Payton-O'Brien, JAGC, USN.
**Convening Authority:** Commander, Naval Medical Center, San Diego, CA.
**Staff Judge Advocate's Recommendation:** CDR K.M. Messer, JAGC, USN.
**For Appellant:** LT Jessica L. Ford, JAGC, USN.
**For Appellee:** LT Ian D. MacLean, JAGC, USN; Capt Matthew Harris, USMC.

**19 March 2015**

---------------------------------------------------------
## OPINION OF THE COURT
---------------------------------------------------------

**THIS OPINION DOES NOT SERVE AS BINDING PRECEDENT, BUT MAY BE CITED AS PERSUASIVE AUTHORITY UNDER NMCCA RULE OF PRACTICE AND PROCEDURE 18.2.**

HOLIFIELD, Judge:

A panel of members with enlisted representation sitting as a general court-martial convicted the appellant, contrary to his pleas, of forcible sodomy in violation of Article 125, Uniform Code of Military Justice, 10 U.S.C. §925.[1] The members sentenced

---
[1] The appellant was acquitted of a second specification of forcible sodomy involving a different alleged victim on an occasion several years earlier.

the appellant to one year of confinement and a dishonorable discharge.  The convening authority (CA) approved the sentence as adjudged.[2]

The appellant raises four assignments of error (AOE):

(1) that the evidence is legally and factually insufficient to support his conviction;

(2) that the military judge erred in excluding evidence under MILITARY RULE OF EVIDENCE 412, MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.);

(3) that the CA was subject to unlawful command influence in his decision to refer the charges to court-martial; and

(4) that the military judge improperly denied a challenge for cause against a member.

After careful consideration of the record of trial, the appellant's AOEs, and the submissions of the parties, we find merit in the appellant's second AOE.  We address the remedy in our decretal paragraph.  This corrective action moots the appellant's fourth AOE.  The remaining assignments of error raised by the appellant merit neither relief nor further analysis.  *United States v. Clifton*, 35 M.J. 79, 81 (C.M.A. 1992) (citing *United States v. Matias*, 25 M.J. 356, 361 (C.M.A. 1987).

## Background

The appellant and the complaining witness, Hospitalman (HN) P, both males, were stationed at Naval Station, Guantanamo Bay in late 2011.  The appellant expressed a romantic interest in HN P to a mutual friend, Missile Technician Second Class (MT2) W, who responded by informing the appellant that HN P was not homosexual.  During a separate conversation, MT2 W told HN P of the appellant's interest.  HN P indicated he did not share the interest, but was willing to meet the appellant, as the appellant was well-known for his extravagant parties. Approximately one week later, HN P was invited to join the

---

[2] On 29 January 2015, the court released an opinion in which we set aside the findings and sentence and returned the record of trial to the Judge Advocate General for remand to an appropriate CA with a rehearing authorized.  By Order dated 27 February 2015, the court determined that it would *sua sponte* reconsider its 29 January 2015 opinion.  The court's 29 January 2015 opinion is hereby withdrawn and replaced with this opinion, reaching the same conclusion but clarifying the reasoning supporting it.

appellant and Master-at-Arms Second Class (MA2) R at their table in the chow hall. During this initial conversation with the appellant and MA2 R, HN P described things he had done while drunk, including placing his penis in another man's hand during a penis measuring contest.

Later that night, the appellant, HN P, MA2 R and a group of others met for a barbecue at a block of trailers used as barracks. Shortly thereafter, they proceeded to an on-base bar, where they consumed various alcoholic beverages until the bar closed. HN P then invited the group back to his trailer to continue drinking. At the time they arrived at the trailer, HN P had consumed less than one drink per hour throughout the evening. He would have at least five more drinks in the next 90 minutes.

While outside HN P's trailer, the appellant and HN P conversed with each other as the others in the party slowly departed. HN P's last memory of the party involves taking off his shirt to show the appellant his tattoos. His next recollection is a brief moment of lucidity when he realized the appellant was attempting to anally penetrate him as he lay in his trailer. Although he recalls being in pain, he does not remember saying anything. He also has a brief memory of the appellant fully penetrating him and kissing him on the lips. HN P remembers nothing else until he awoke alone the following morning, naked and in pain. He initiated the reporting process later that day.

During the alleged assault, HN P's trailer-mate, Sergeant (Sgt) B, heard what he described as "sexual noises" coming from HN P's room.[3] Record at 883. Among these noises, Sgt B testified that he heard HN P say, "Oh, baby, that feels good." *Id*. at 892.

At trial, the Government commented on HN P's purported heterosexuality in both its opening statement and closing argument. In response to the prosecution's questioning, HN P testified that he was not homosexual. He also testified that MT2 W had informed the appellant of HN P's aversion to homosexual activity. The military judge, finding some evidence in support a mistake-of-fact defense, provided the relevant instruction to the members. The appellant, however, was precluded from using the "penis measuring contest" statement to challenge HN P's claimed heterosexuality, either to impeach HN P's testimony or to challenge the Government's argument that HN

---

[3] The trailers consisted of two rooms joined by a common bathroom.

P's known heterosexuality rendered any mistaken belief of consent unreasonable.

### Exclusion of Evidence under MIL. R. EVID. 412

Prior to trial, the appellant's trial defense counsel filed a motion to admit evidence of the statement HN P made to the appellant and MA2 R at lunch the day before the alleged assault. The defense argued that HN P's statement concerning his placing his penis in another man's hand was constitutionally required, in that it showed a motive to fabricate, impeached HN P's testimony that he was not gay, and was relevant to the appellant's mistake of fact as to consent. The military judge, in a brief e-mail to counsel, issued the following ruling: "The defense MAY ask ONE QUESTION of [HN P] as to confirm his sexual orientation, under MRE 608(c) to demonstrate bias, prejudice or motive to misrepresent. . . . Pursuant to MRE 412(c), the defense MAY NOT inquire as to [HN P's] prior act with another male in which he exposed his penis in some sort of 'penis measuring' contest." Appellate Exhibit XXXV. No additional findings of fact or conclusions of law are included in the record.

We review the military judge's ruling on whether to exclude evidence pursuant to MIL. R. EVID. 412 for an abuse of discretion. *United States v. Roberts*, 69 M.J. 23, 26 (C.A.A.F. 2010). We review the findings of fact under a clearly erroneous standard and the conclusions of law *de novo. Id.* The abuse of discretion standard "recognizes that a judge has a range of choices and will not be reversed so long as the decision remains within that range." *United States v. Freeman*, 65 M.J. 451, 453 (C.A.A.F. 2008) (citations and internal quotation marks omitted).

Under MIL. R. EVID. 412, evidence offered by the accused to show that the alleged victim engaged in other sexual behavior is inadmissible, with three limited exceptions. The third exception states that the evidence is admissible if "the exclusion of [it] would violate the constitutional rights of the accused." MIL. R. EVID. 412(b)(1)(C). If there is a theory of admissibility under one of the exceptions, the military judge, before admitting the evidence, must conduct a balancing test as outlined in MIL. R. EVID. 412(c)(3) and clarified by *United States v. Gaddis*, 70 M.J. 248, 250 (C.A.A.F. 2011).

The test is whether the evidence is "relevant, material, and [if] the probative value of the evidence outweighs the dangers of unfair prejudice." *United States v. Ellerbrock*, 70

4

M.J. 314, 318 (C.A.A.F. 2011) (citation omitted).  Relevant evidence is any evidence that has "any tendency to make the existence of any fact . . . more probable or less probable than it would be without the evidence."  MIL. R. EVID. 401.  Evidence is material if it is "of consequence to the determination of appellant's guilt[.]"  *United States v. Dorsey*, 16 M.J. 1, 6 (C.M.A. 1983) (citations and internal quotation marks omitted).

> In determining whether evidence is of consequence to the determination of appellant's guilt, we consider the importance of the issue for which the evidence was offered in relation to the other issues in this case; the extent to which this issue is in dispute; and the nature of the other evidence in the case pertaining to the issue.

*United States v. Smith*, 68 M.J. 445, 448 (C.A.A.F. 2010) (citation and internal quotation marks omitted).

If evidence is relevant and material, it must be admitted where its probative value outweighs the dangers of unfair prejudice.  *See* MIL. R. EVID. 412(c)(3).  "Those dangers include concerns about 'harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant.'"  *Ellerbrock,* 70 M.J. at 319 (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986)).  If the evidence survives the inquiry, a final consideration is whether the evidence in the record supports the inference on which the moving party is relying.  *Id.*

MIL. R. EVID. 412 "is intended to protect the privacy of victims of sexual assault while at the same time protecting the constitutional right of an accused to a fair trial through his right to put on a defense."  *Id*. at 322 (Baker, J., dissenting).  This right necessarily includes the ability to cross-examine and to impeach or discredit a witness.  The cross-examination, however, need not be "'in whatever way, and to whatever extent, the defense might wish[,]'" and the military judge may limit the scope of such cross-examination when its relevance is outweighed by concerns of harassment, prejudice, or confusion of the issues.  *Id.* at 318 (quoting *Van Arsdall,* 475 U.S. at 679) (additional citation omitted).  "But no evidentiary rule can deny an accused of a fair trial or all opportunities for effective cross-examination."  *Id.* (citation omitted).

Applying the above test to the facts of this case, we find the military judge erred in excluding the statement.

*Mistake of Fact as to Consent*

An alleged victim's sexual orientation, standing alone, is not relevant under MIL. R. EVID. 412. *See United States v. Grant*, 49 M.J. 295, 297 (C.A.A.F. 1998). In the present case, however, the Government made it relevant. The Government elicited from HN P testimony that he was not homosexual, presented evidence that the appellant had been told that HN P "doesn't swing that way," Record at 799, successfully argued for the exclusion of all evidence that suggested otherwise, and then sought the benefit of the resulting incomplete picture by arguing that the appellant's knowledge of HN P's sexual orientation did not support that the appellant "was reasonably mistaken somehow," *id*. at 1051. In effect, the Government used HN P's sexual orientation as a sword, then sought to hide behind MIL. R. EVID. 412's shield when the appellant attempted to question the Government's case. Where the Government uses sexual orientation in a way that implies the impossibility of consent, or a reasonable mistake of fact as to consent, the defense must be allowed to rebut that inference. To do otherwise denies the appellant his right to mount a defense, and allows the Government to meet its burden based on an incomplete description of events.

*Actual Consent and the Importance of Credibility*

The Government also had to prove that HP did not, in fact, consent to the sexual act. HN P's credibility was the key to answering that question. HN P testified during the trial that he "was straight." *Id.* at 859. This could only have left the members with the impression that, since HN P was not gay, he would not have consented to the sodomy. The appellant's inability to confront and impeach him on this critical point severely impacted his ability to present a defense. Compounding the problem, the military judge's ruling only served to further hamstring the defense's ability to impeach HN P's statement that he was not homosexual. The likely result of asking the one question allowed by the military judge – "to confirm his sexual orientation" - would have been only to reinforce HN P's earlier testimony to the members.

*Not Harmless Beyond a Reasonable Doubt*

Based upon the Government's affirmative use of HN P's sexual orientation to meet its burden of proof, as well as HN P placing his sexual orientation in evidence, we find HN P's statement to the appellant to be relevant and material. As we also find its probative value to outweigh the dangers of unfair

prejudice,[4] and that the appellant's theory of admissibility is supported by the record, the statement's admission was constitutionally required.  We, therefore, must test whether exclusion of this evidence was harmless beyond a reasonable doubt.  In doing so, we apply the five nonexclusive factors developed in *Van Arsdall*:

> [T]he importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case.

475 U.S. at 684 (citations omitted).

The only evidence presented by the Government in this case to prove what happened in HN P's trailer on the night in question was HN P's testimony.  HN P's statements that he was straight and did not consent to the sodomy were crucial to the appellant's conviction.  The trial defense counsel was not allowed to cross-examine HN P on his claim of heterosexuality. While the military judge did permit the defense's expert to testify regarding why a victim of sexual assault may invent facts in order to deal with behavior of which the person might be ashamed, this theoretical discussion was clearly eclipsed by HN P's unchallenged, sworn testimony that he was not gay and did not consent to the sodomy.  Finally, the Government's case was far from overwhelming, there being little, if any, evidence to corroborate HN P's description of events in the trailer.

We find that, had the military judge admitted HN P's statement, the members could have "received a significantly different impression" of both HN P's credibility and the reasonableness of any mistaken belief held by the appellant. *Ellerbrock,* 70 M.J. at 321 (citations and internal quotation marks omitted).  Furthermore, we are convinced that there is "a reasonable possibility that the [exclusion of the evidence] might have contributed to the conviction."  *Id.* (citation and

---

[4] While the prosecution warned of distraction and the need for a "trial within a trial" should the statements be admitted, these concerns are unfounded. First, the only issue relevant to the appellant's belief as to consent was whether and in what context the appellant heard HN P make the statement; it does not matter on this point whether the statement was true.  Second, had the appellant been allowed to attack HN P's credibility by challenging his claims of heterosexuality, we do not doubt the military judge could have fashioned proper limits on the questioning regarding HN P's sexual orientation.

internal quotation marks omitted).  This is particularly true when the statement is combined with the sounds and words overheard in the trailer that night by Sgt B.  Accordingly, we find this error was not harmless beyond a reasonable doubt.

## Conclusion

The findings of guilty and the sentence are set aside.  The record of trial is returned to the Judge Advocate General of the Navy for remand to an appropriate CA with a rehearing authorized.

Senior Judge MCFARLANE and Judge BRUBAKER concur.

For the Court



R.H. TROIDL
Clerk of Court